1744

Alex KIRIAKIDES, Jr., and John Kiriakides, Appellants v. UNITED ARTISTS COMMUNICATIONS, INC., Respondent.

(413 S.E. (2d) 850)

Court of Appeals

*Edward M. Woodward, Jr.* of *Woodward, Leventis, Unger, Herndon & Cothran,* Columbia, *for appellants.*

*James H. Cassidy* and *V. Clark Price* of *Love, Thornton, Arnold & Thomason,* Greenville, *for respondent.*

Heard Nov. 6, 1991.

Decided Jan. 6, 1992.

*Per Curiam:*

This action was commenced by Plaintiffs-Appellants, Alex Kiriakides, Jr. and John Kiriakides (Landlords) against Defendant-Respondent, United Artists Communications, Inc. (New Tenant) seeking an ejectment. The issues were submitted to a jury which found in favor of the New Tenant, the effect of which was to leave this Tenant in possession of the rented properties and continue the lease agreement. The trial judge denied motions of the Landlords for a directed verdict and for judgment notwithstanding the verdict. The Landlords appeal these rulings. We reverse and remand.

## FACTS

On January 15, 1976, the Landlords entered into a lease agreement with Fairlane Litchfield Company, Inc. (First Tenant) for a period of twenty years. Thereafter the lease was amended to provide additional years with further options to renew to the year 2016. Apparently, payments were made without event by this First Tenant—Fairlane.

On May 15, 1987, the First Tenant assigned the lease to the New Tenant, United Artists Communications, Inc., a Maryland corporation whose address on the lease is indicated as "2545 Hempstead Turnpike, East Meadow, New York 11554."

In February 1988, the Landlords advised the New Tenant by letter that increased additional rent was due. The letter was apparently ignored and one year later, on February 9, 1989, the Landlords addressed a letter to the New Tenant, not at the New York address as indicated on the assignment, but

to "60 Craig Road, Montvale, New Jersey 07645" advising the New Tenant that if payment was not made within ten days ". . . we are going to regretfully exercise our rights under the lease."

Section 16 of the lease provides that if the New Tenant fails to make any payment of any installment of rent or other sum required to be paid, the Landlords may, upon giving ten days written notice of such failure to make payment, terminate the lease.

Section 25 of the lease in relevant part provided as follows:

> NOTICES. All notices, demands, requests and other instruments which may, or are required to be given by either party to the other under this lease shall be in writing and shall be deemed to have been properly given when deposited in the United States mail (as determined by the postmark) in certified or registered form, return receipt requested, postage prepaid, addressed to such party at its address as set forth at the beginning of this lease or at such other address as shall theretofore have been designated by such party by written notice to the other.

The February 9, 1989, letter was addressed to the New Tenant at the New Jersey address. It is described by the New Tenant's own witness as ". . . our accounting office." The letter was received in New Jersey on the 16th and was received in the New York office on the 17th. Rent, admittedly due, was not forthwith coming within the ten day period nor until March 3rd, the day on which this action for ejectment was commenced by service of the Summons and Complaint at the New Jersey office.

## ISSUES

The issues submitted to the jury as stated by the judge were ". . . whether or not the Defendant [New Tenant] has breached the contract, that is the lease, and whether or not Mr. Kiriakides complied with the notice provision."

## LAW/ANALYSIS

In its Answer the New Tenant submitted, among other defenses, that if the lease was broken termination would be inequitable under the facts of the case. Counsel for the Land-

lords admits "[i]f Landlord is successful on that issue, the question of unconscionability and to what extent unconscionability is really an issue can be fully litigated on remand with instructions from this Court."

It is the contention of the Landlords that the only reasonable inference to be drawn from the whole of the evidence is that the notice requirement was met. The question is: Was the notice sent to the New Jersey office sufficient compliance with paragraph 25? We hold that it was a matter of law. To hold otherwise would place form over substance. The only notice which the Landlords had that paragraph 25 notification should be sent to the New York office was the address indicated by the assignee on the assignment. All rent checks were mailed to the Landlords from the New Jersey accounting office. Notice was undisputably sent to the office which paid the rent. The letter was forwarded to the New York office prior to the ten day limitation and admittedly received within the ten day period. If the letter had been addressed directly to the New York office, there could be no debate as to whether compliance was had and there could be no debate but that the Landlords would be entitled to prevail.

We hold that the letter of February 9, 1989, handled in the fashion described hereinabove, was sufficient compliance with the terms of the lease. But landlords may not ultimately succeed.

In the case of *Litchfield Co. of S.C., Inc. v. Kiriakides*, 290 S.C. 220, 349 S.E. (2d) 344 (Ct. App. 1986) these two Landlords attempted to terminate prematurely a lease alleging breach thereof. This Court denied relief holding that the lease provisions breached were not substantial or fundamental justifying forfeiture. The Court said:

> Moreover, as a rule, even in the absence of elements of fraud, accident or mistake, equity will relieve against a forfeiture of a lease incurred by the breach of a covenant to pay rent. *Sheets v. Selden*, 74 U.S. 416, 7 Wall. 416, 19 L. Ed. 166 (1869); 49 Am. Jur. (2d) *Landlord and Tenant* Section 1079 (1970).

*Litchfield*, 290 S.C. at 227, 349 S.E. (2d) at 348.

The Court went on to hold that it would be inequitable under the facts to permit forfeiture of title. It is unfortunate

that the trial court did not address the inequitable issue raised by the New Tenant's Answer. Such might have made this appeal unnecessary.

We reverse the ruling of the trial judge and hold that a directed verdict should have been granted. A remand is in order to determine whether on equitable grounds this lease should be terminated.

Reversed and remanded.